COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

PAUL RAMIREZ,                                                No. 08-08-00269-CR

§

Appellant,                                    Appeal from

§

v.                                                              120th District Court

§

THE STATE OF TEXAS,                                of El Paso County, Texas

§

Appellee.                              (TC # 20080D01417)

§

# **O P I N I O N**

Paul Ramirez appeals his conviction of possession of more than fifty pounds but less than 2,000 pounds of marihuana. After a jury found Appellant guilty, the State and Appellant entered into an agreement regarding punishment. The trial court accepted the agreement and assessed punishment at imprisonment for ten years. We affirm.

## **FACTUAL SUMMARY**

On March 17, 2008, Detective Javier Monreal participated in an investigation into the possession of drugs at an apartment in El Paso. Detectives Sergio Lopez and Joe Molina, and Canine Officer Gabby Corral and her dog, Barry, also participated in the investigation. Monreal planned to conduct a knock-and-talk in an effort to make contact with someone at the apartment and obtain consent to search. When they arrived at the apartment door, Barry immediately alerted to the odor of narcotics along the lower door seam. The detectives knocked but no one answered at first. The officers could hear people moving around inside of the apartment and continued to knock. After a minute or two, Appellant opened the door. Monreal immediately smelled the odor of marihuana emanating from inside of the apartment. Appellant closed the door behind him and began talking

with the officers.

Monreal and the other officers identified themselves and Monreal advised Appellant that they were investigating a tip that marihuana was in the apartment. Monreal then asked Appellant for consent to search. Appellant refused. Because the detectives could hear other people in the apartment, Monreal told Appellant that the dog had alerted to the odor of marihuana and they were going to get a search warrant. Monreal also informed Appellant they were going to do a protective sweep of the residence to ensure that no one in the apartment had weapons or would remain inside to destroy the drugs. Appellant told Monreal that a female was inside of the apartment. He also said that his mother lived in the apartment. The detectives went inside and while announcing their presence walked through the apartment. Josephine Anchondo walked out into the hallway and the officers escorted her outside. After they cleared the apartment to determine no one else was there, the detectives went back outside. They did not conduct any search other than the protective sweep. The officers detained Appellant and Anchondo outside of the apartment while Detectives Monreal and Molina left to obtain the search warrant. While they waited for Monreal to return, Detective Lopez engaged in "small talk" with Appellant and Anchondo to pass the time. Lopez purposefully did not ask Appellant any questions related to the investigation. Lopez noted there was a "lot of silence" during the wait. At one point, Appellant asked him how long it would take to get the warrant. Lopez replied that he did not know for sure but it would be a while. Appellant then said, "Well, what if I give you permission to do it right now? It's right here in the corner. As soon as you walk in, it's in the closet." Lopez told him they were going to wait for the warrant. They waited a total of two and one-half hours for Monreal to return with the warrant.

Monreal prepared a search warrant affidavit and presented it to a magistrate who found probable cause and issued a search warrant. Monreal returned to the apartment with the search

warrant and conducted the search. They found 213 bundles of marihuana in a closet near the apartment's front door. The marihuana weighed almost 230 pounds. After they found the marihuana, the officers placed Appellant under arrest. During the search, Monreal found evidence linking Appellant's mother to the apartment. Monreal advised Appellant that his mother could also be charged with possession. At that point, Appellant claimed exclusive ownership of the marihuana.

Appellant filed a motion to suppress custodial statements made while they were waiting for Monreal to obtain the search warrant. He also sought to suppress contraband seized from his residence as a result of the statements he made. At the suppression hearing, the State relied on the search warrant to justify the search. The trial court granted the motion to suppress a custodial statement by Appellant admitting the marihuana was his, but the court denied the motion to suppress Appellant's statement informing Detective Lopez of the marihuana's location in the apartment. The court also found that the search warrant affidavit stated probable cause and was not based on any statement unlawfully obtained from Appellant.

## MOTION TO SUPPRESS THE MARIHUANA

In Issue One, Appellant raises two arguments in his challenge to the trial court's denial of his motion to suppress the evidence seized from the residence. First, he complains that the search warrant affidavit does not establish probable cause because it is based solely on the canine alert. Second, he maintains the affiant misled the magistrate because he failed to mention that he had smelled freshly burned marihuana. Citing *Franks v. Delaware*,[1] Appellant urges that the trial court should have invalidated the warrant. The State first responds that Appellant waived these issues by stating at trial he had no objection to the admission of the marihuana.

To preserve error on appeal, the complaining party must make a timely, specific objection

---

[1] *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

and obtain a ruling on the objection. TEX.R.APP.P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex.Crim.App. 2002). A party must continue to object every time inadmissible evidence is offered. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991); *Gillum v. State*, 888 S.W.2d 281, 285 (Tex.App.--El Paso 1994, pet. ref'd). Generally, once a pretrial motion to suppress is overruled, the defendant is not required to object to admission of the same evidence at trial in order to preserve error for appeal. *Livingston v. State*, 739 S.W.2d 311, 334 (Tex.Crim.App. 1987). However, when the objectionable evidence is offered during trial and the defendant affirmatively asserts that he has "no objection" to its admission, he waives any error in the admission of the evidence despite the pretrial suppression ruling. *Moody v. State*, 827 S.W.2d 875, 889 (Tex.Crim.App. 1992); *Dean v. State*, 749 S.W.2d 80, 83 (Tex.Crim.App. 1988); *Traylor v. State*, 855 S.W.2d 25, 26 (Tex.App.-El Paso 1993, no pet.). When the State offered the marihuana into evidence at trial, Appellant affirmatively stated, "I have no objection." Consequently, Appellant's arguments are waived. We overrule Issue One.

## MOTION TO SUPPRESS APPELLANT'S STATEMENT

In his second issue, Appellant contends that the trial court erred by not suppressing his statement regarding the location of the marihuana in the apartment. The trial court found that Appellant's statement was not the product of custodial interrogation.

The trial court is the sole factfinder at a suppression hearing, and it may believe or disbelieve all or any part of a witness's testimony. *Amador v. State*, 275 S.W.3d 872, 878 (Tex.Crim.App. 2009); *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). Moreover, at a suppression hearing, the trial court, like any factfinder, may make reasonable inferences from the evidence presented. *Amador*, 275 S.W.3d at 878, *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex.Crim.App. 2008).

A trial court's ruling on a motion to suppress, like any ruling on the admission of evidence, is subject to review on appeal for abuse of discretion. *Amador*, 275 S.W.3d at 878. In other words, the trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id*. at 878-79; *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex.Crim.App. 2008). In reviewing a trial court's ruling on a motion to suppress, appellate courts must view all of the evidence in the light most favorable to the trial court's ruling. *State v. Garcia-Cantu*, 253 S.W.3d at 241.

We are to afford almost total deference to a trial court's express or implied determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *State v. Ross*, 32 S.W.3d at 856; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). We are to afford the same level of deference to a trial court's ruling on application of law to fact questions, also known as mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *State v. Ross*, 32 S.W.3d at 856. We review *de novo* mixed questions of law and fact not falling within that category. *Id.*

Article 38.22 and *Miranda* do not apply unless the accused's statement is the result of custodial interrogation. TEX.CODE CRIM.PROC.ANN. art. 38.22, § 5 (Vernon 2005); *Dowthitt v. State*, 931 S.W.2d 244, 263 (Tex.Crim.App. 1996). Custodial interrogation occurs when a person in custody is subjected to direct questioning or its functional equivalent, which occurs when police officers engage in conduct that they know is likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980). This definition of "interrogation" focuses "primarily upon the perceptions of the suspect, rather than the intent of the police." *Moran v. State*, 213 S.W.3d 917, 923 (Tex.Crim.App. 2007), *citing Innis*, 446 U.S. at 301,

100 S.Ct. 1682 (subjective intent of police officer to obtain incriminating statement not relevant to determining whether an interrogation has occurred). Off-hand remarks, not designed to elicit any kind of response, do not constitute interrogation. *Innis*, 446 U.S. at 303, 100 S.Ct. at 1691.

Appellant's statement was not made in response to direct questioning. To the contrary, Appellant initiated this portion of the conversation by asking how long it would take to obtain a search warrant. When Lopez replied he did not know for sure, but it would be a while, Appellant stated: "Well, what if I give you permission to do it right now? It's right here in the corner. As soon as you walk in, it's in the closet." Lopez told Appellant they were still going to wait for the search warrant. There is nothing in the record to indicate Lopez answered Appellant's question with any intent to cause Appellant to make an incriminating statement. Just as importantly, there is no evidence that Lopez's comment caused Appellant to make the incriminating statement regarding Appellant's knowledge of the marihuana in his apartment closet. Lopez simply gave a direct answer to the question asked of him. The trial court correctly concluded that Appellant's statement was not the product of custodial interrogation or its functional equivalent. We overrule Issue Two and affirm the judgment of the trial court.

June 23, 2010

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)